UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ALEJANDRO HERNANDEZ, | § § § | |
| *Plaintiff*, | § | |
| v. | § | EP-20-CV-00263-DCG |
| | § | |
| ROBERT STEWART ROCHE, JR., | § § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Alejandro Hernandez, proceeding pro se, asks the Court to enter default judgment against pro se Defendant Robert Stewart Roche, Jr.  Mot. Default J., ECF No. 49 ("Motion").  Plaintiff seeks default judgment on two claims: a violation of Title III of the Americans with Disabilities Act ("ADA") and business disparagement under Texas state law.  The Court GRANTS default judgment as to Plaintiff's ADA Title III claim and DENIES default judgment as to Plaintiff's business disparagement claim because the Court lacks supplemental jurisdiction over that claim.

### I.   BACKGROUND[1]

The facts of this case are situated early in the COVID-19 pandemic.  At that time, many governmental authorities and private businesses required individuals to wear face masks.  While those face mask mandates were in effect, Plaintiff attempted to visit an estate sale hosted by Defendant.  Plaintiff says Defendant denied him entrance into his estate sale because he was not wearing a face mask.  Am. Compl., ECF No. 33 ¶¶ 11, 21.  In doing so, Plaintiff claims that Defendant violated ADA Title III by failing to accommodate his disability.  Wearing a face mask or any other face covering, Plaintiff claims, causes him "breathing difficulties, extreme anxiety,

---

[1] The facts presented herein come from Plaintiff's Amended Complaint.

- 1 -

abrupt panic attacks, spatial-time dissociation and mental distress." *Id.* ¶ 19. Plaintiff allegedly asked Defendant to accommodate him by allowing him to shop at the estate sale alone, either before or after typical hours, or by appointment. *Id.* ¶ 23. Defendant allegedly refused Plaintiff's requested accommodation. *Id.* Plaintiff continues to not be able to shop at Defendant's estate sales. *See id.* ¶¶ 28–29.

On October 23, 2020, Plaintiff filed his original complaint. Compl., ECF No. 2. Defendant moved to dismiss the complaint for failure to state a claim. Answer & Mot. Dismiss, ECF No. 12 at 4–13. The Court referred Defendant's motion to dismiss to a U.S. Magistrate Judge, Referral Order, ECF No. 18, who issued a report and recommendation, R. & R., ECF No. 23. This Court accepted the Magistrate Judge's recommendation to dismiss Plaintiff's claim and granted Plaintiff leave to amend his complaint. Mem. Order, ECF No. 27.

Plaintiff filed his Amended Complaint on October 7, 2021. Am. Compl. In his Amended Complaint, Plaintiff added a business disparagement claim under Texas state law. *Id.* at 1, ¶¶ 42–48.

Defendant has taken no action in this case since Plaintiff filed his Amended Complaint. The Court twice ordered Defendant to show cause for his failure to answer or otherwise respond to Plaintiff's amended complaint, ECF Nos. 36, 38. No answer. Plaintiff moved to compel Defendant to respond to Plaintiff's discovery requests. Mot. Compel, ECF No. 41. Again, no answer. Furthermore, Defendant has not responded to any of Plaintiff's filings related to default and default judgment, which the Court discusses below. ECF Nos. 42, 45, 49.

## II.  DISCUSSION

Federal Rule of Civil Procedure 55 governs entry of default and default judgment. "A *default* occurs when a defendant has failed to plead or otherwise respond to the complaint within

the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Next comes an *entry of default*, which the clerk enters "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a); *Brown*, 84 F.3d at 141. Once the clerk has entered default, a "plaintiff may apply for a judgment based on such default. This is a *[motion for] default judgment*." *Brown*, 84 F.3d at 141. At that point, a court, with certain exceptions, may enter default judgment. FED. R. CIV. P. 55(b)(2).

Default judgments are not the norm. They "are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citations omitted). But the procedure exists because "an essentially unresponsive party" can halt the adversary process. *Id.* (quotation omitted).

Even so, "a 'party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default.'" *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). Before a court enters default judgment, it must be satisfied that it is procedurally proper and that there is "a sufficient basis in the pleadings for the judgment [to be] entered." *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Wieck v. Synrg.Royce LLC*, A-17-CV-599 LY, 2019 WL 697291, at *2 (W.D. Tex. Feb. 20, 2019); FED. R. CIV. P. 55(b). "[A] default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu Constr.*, 515 F.2d at 1206 ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). If default judgment is procedurally warranted and there is a sufficient basis in the pleadings, the court must determine "what relief, if

any, the plaintiff should receive." *Wieck*, 2019 WL 697291, at *2 (citing *Nasufi v. King Cable Inc.*, No. 3:15-CV-3273-B, 2017 WL 6497762, at *2 (N.D. Tex. Dec. 19, 2017)).

### A. Whether Default Judgment Is Procedurally Warranted

With certain exceptions not applicable here, default judgment is procedurally warranted if the clerk's entry of default was proper under Rule 55(a). *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384–85 (W.D. Tex. 2008). Entry of default is proper when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a). If a defendant initially appeared in the case, but later "failed to . . . defend," FED. R. CIV. P. 55(a), a court can issue default judgment, *see, e.g.*, *Calumet Lumber, Inc. v. Mid-Am. Indus., Inc.*, 103 F.3d 612, 614–17 (7th Cir. 1997) (affirming default judgment where defendant failed to answer cross-claim after district court denied a motion to dismiss); *United States v. Brow*, 267 F. App'x 96, 97 (2d Cir. 2008) (affirming default judgment when defendant filed months-late and defective answer and failed to respond to the district court's letter); *Garnier-Thiebaut, Inc. v. Castello 1935 Inc.*, No. SDT-17-3632, 2019 WL 6696694, at *11 (D. Md. Dec. 6, 2019) (entering default judgment after failure to answer amended complaint filed after the court denied a motion to dismiss).

Initially, Defendant appeared when he filed and answer and motion to dismiss. Answer & Mot. Dismiss. The Court accepted the Magistrate Judge's recommendation to grant Defendant's motion to dismiss, and the Court granted Plaintiff an opportunity to amend his complaint. Mem. Order. Plaintiff took that opportunity. Am. Compl. Defendant, however, did not timely answer or otherwise respond to the Amended Complaint, and still has not done so despite multiple orders from the Court directing him to do so. ECF Nos. 36, 38, 42. After the

Court issued an order instructing Plaintiff to file for default (or for Defendant to show cause why he should be permitted to answer), Plaintiff filed for default, and supported by affidavit his claim that Defendant failed to plead or otherwise defend. ECF No. 45. The Clerk subsequently entered default. ECF No. 47.

Plaintiff has now moved for default judgment and has filed an affidavit in support of his motion. Mot. Default J. Because Defendant has failed to answer Plaintiff's amended complaint, has failed to respond to Plaintiff's Motion, and has otherwise failed to defend, default judgment is procedurally warranted. *See Garnier-Thiebaut*, 2019 WL 6696694, at *11 (entering default judgment after failure to answer amended complaint filed after the court denied a motion to dismiss).

### B.  Whether There Is a Sufficient Basis in the Pleadings

A default judgment must be "supported by well-pleaded allegations, assumed to be true." *Nishimatsu Constr.*, 515 F.2d at 1206 (citing *Thomas v. Wooster*, 114 U.S. 104 (1885)). That requires that a plaintiff plead facts sufficient to meet the Rule 12(b)(6) standard—that is, that there is a plausible claim for relief. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498–500 (5th Cir. 2015) (holding allegations in default judgment posture were "sufficient to satisfy the low threshold of Rule 8").

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA defines discrimination to include:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities,

privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

*Id.* § 12182(b)(2)(A)(ii).

A four-prong test governs whether a plaintiff has established a prima facie case of disability discrimination by a place of public accommodation. A plaintiff must show that:

(1) he is disabled as the term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.[2]

*Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 683 n.38 (2001)); *see also Kooster v. Young Men's Christian Ass'n of Greater St. Louis*, 855 F.3d 908, 910 (8th Cir. 2017); *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 307 (1st Cir. 2003); *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1058–59 (5th Cir. 1997) (discussing burdens of proof).[3]

---

[2] A defendant need not implement a requested modification if it will fundamentally alter the nature of the public accommodation. *Kooster*, 855 F.3d at 910; 42 U.S.C. § 12182(b)(2)(A)(ii). However, the defendant bears the burden to establish "that the requested modification would fundamentally alter the nature of the public accommodation." *Johnson*, 116 F.3d at 1059. The Court, therefore, has not included this element in the standard governing whether a plaintiff has asserted a prima facie case of discrimination under Title III.

[3] The Fifth Circuit has not had the occasion to directly opine on the elements of an ADA Title III claim, though it has addressed Title III claims and those opinions provide the Court guidance. *See, e.g.*, *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180 (5th Cir. 2015); *Gonzales v. H.E. Butt Grocery Co.*, 226 F. App'x 342 (5th Cir. 2007); *McNeil v. Time Ins. Co.*, 205 F.3d 179 (5th Cir. 2000); *Johnson*, 116 F.3d 1052. Based on the plain language of 42 U.S.C. § 12182(b)(2)(A)(ii) and Fifth Circuit precedent, the Court concludes that a plaintiff can make out a prima facie claim of discrimination under Title III of the ADA by alleging facts that meet the elements of the test as quoted above and set forth in *Fortyune*. 364 F.3d at 1082.

In a prior Memorandum Order, the Court held that Plaintiff had sufficiently pleaded the first two elements of the *Fortyune* test in his Original Complaint. Mem. Order at 9. The Court need not revisit this issue. In his Amended Complaint, Plaintiff continues to adequately plead facts that, as to those two elements, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also* Am. Compl. ¶ 19 (showing it's plausible that Plaintiff is disabled); *id.* ¶ 12 (showing it's plausible that Defendant operates a place of public accommodation).

Plaintiff also adequately pleads the third element that Defendant employed a discriminatory policy or practice. Within the meaning of ADA Title III, a discriminatory policy or practice treats an individual differently based on their disability and results in the denial of "goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); *cf. Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 707–10 (W.D. Tex. 2010) (discussing discriminatory policy or practice for standing purposes). Plaintiff alleges that Defendant employs a "no mask, no service" policy. Am. Compl. ¶ 21. Despite Plaintiff's attempts to explain to Defendant that he could not wear a mask due to his disability, Defendant refused to alter his policy so that Plaintiff would be allowed to shop at Defendant's estate sale. *Id.* ¶¶ 11, 21. Accepting Plaintiff's allegations as true, he adequately pleads that Defendant employed a discriminatory policy or practice. *Cf. Johnson*, 116 F.3d at 1061 n.6 ("[I]t is discriminatory to refuse to alter a 'no pets' rule for a person with a disability who uses a guide or service dog." (quoting H.R. REP. NO. 485(III), 101st Cong., 2d Sess. 59 (1990), *reprinted in* 1990 U.S.C.C.A.N. 445, 482)).

Plaintiff also adequately pleads that he requested a reasonable modification and that Defendant failed to modify his policy. As explained, Plaintiff told Defendant that he could not

wear a face mask due to his disability. Am. Compl. ¶ 11. Plaintiff showed Defendant the City of El Paso's Fifth Local Emergency Directive and the Governor of Texas's Executive Order GA 29, *id.*, both of which provide for face mask exceptions for individuals with medical conditions that prevent them from wearing one, *id.* ¶¶ 14–15; City of El Paso, Tex., *Fifth Local Emergency Directive by the Mayor of the City of El Paso*, Tex. (Sep. 18, 2020), https://tinyurl.com/ELP-5th-COVID-Directive; Gov. Abbott, Exec. Order GA 29 (July 2, 2020), https://tinyurl.com/Executive-Order-GA29. Despite this conversation and Plaintiff's apparent request to shop while social distancing, alone, either before or after closing or by appointment, Defendant did not allow Plaintiff to shop at his estate sale at all. Am. Compl. ¶¶ 11, 23–24. Thus, it is plausible that Defendant failed to make a requested reasonable modification. *See Johnson*, 116 F.3d at 1064 (plaintiff met burden of showing that he requested reasonable modification when asked business to allow use of guide dog and the business could not show use of the guide dog would "fundamentally alter" the nature of service or would "jeopardize the safety of the public accommodation"); *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 119–21 (3d Cir. 2018) (similar).[4]

Plaintiff has also plausibly alleged that at least one of his requested modifications was necessary to accommodate his disability. He has alleged that wearing any type face covering (face mask or face shield) may trigger a number of symptoms stemming from physical and

---

[4] Because Defendant bears the burden to establish "that the requested modification would fundamentally alter the nature of the public accommodation" or would "jeopardize the safety of the public accommodation," Plaintiff need not plead that his requested modification would not fundamentally alter Defendant's estate sales or that he requested modification would make estates sales unsafe. *See Johnson*, 116 at 1059, 1064. Due to the seriousness of the COVID-19 pandemic, however, the Court notes that Plaintiff has pleaded that at least some of his requests would reduce or eliminate potential exposure for other patrons of Defendant's estate sales and that his requests are in line with practices from "larger retailers across the country." Am. Compl. ¶¶ 16, 23–25.

mental ailments. Am Compl. ¶ 19 (alleging he suffers from "parasympathetic nervous asthma, a deviated septum, and complex PTSD"). He further alleges that the City of El Paso, Texas, the State of Texas, and the Centers for Disease Control and Prevention all recognize that certain medical conditions may prevent someone from wearing a face covering. *Id.* ¶¶ 14–16 (citations omitted). Together, these allegations make it plausible that at least one of his requested modifications was necessary to accommodate his disability.

In sum, Plaintiff has plausibly alleged that Defendant violated Title III of the ADA by denying Plaintiff "goods, services, facilities, privileges, advantages, or accommodations"—that is, access to Defendant's estate sale—by failing to make a requested reasonable modification to his face mask policy. 42 U.S.C. § 12182(b)(2)(A)(ii); *see also Johnson*, 116 F.3d at 1064–65 (finding similar with respect to blanket prohibition on service animals).

### C. Appropriate Relief

The relief a plaintiff requests in his "complaint defines the scope of relief available on default judgment." *1998 Freightliner*, 548 F. Supp. 2d at 386. Plaintiff requests injunctive relief requiring Defendant to employ one of Plaintiff's requested reasonable modifications so that he is allowed to shop at Defendant's estate sales.[5] Am. Compl. ¶¶ 49–50.

Absent special circumstances that are inapplicable here, the ADA provides only for injunctive relief for violations of 42 U.S.C. § 12182(b)(2)(A)(ii). 42 U.S.C. § 2000a-3(a) (providing for "preventative relief, including an application for a permanent or temporary injunction"); *id.* § 12188(a)(1) (referring to section 2000a-3(a) for available remedies); *see also*

---

[5] This is also the relief Plaintiff requests in his Motion. *See* Proposed Order for Mot. Default J. at 11–13. Although Plaintiff included a request for attorney fees, litigation expenses, and other costs in his Amended Complaint, Am. Compl. ¶ 50, he did not move for that relief in his Motion. *See generally* Mot. Default J.; Proposed Order for Mot. Default J. The Court, therefore, need not address whether such relief is appropriate at this stage. *See Paez v. Wal-Mart Stores Texas, LLC*, EP-20-cv-00321-DCG, 2022 WL 3216343, at *1–2 (W.D. Tex. Aug. 9, 2022) (explaining unaddressed arguments are waived).

*id.* § 12188(b)(2)(A)(i) (permitting court to grant permanent relief). "An injunction is a matter of equitable discretion." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008); *see also Burrell v. Twin Goose, LLC*, No. 3:16-CV-1079-L, 2017 WL 4230499, at *3 (N.D. Tex. Sep. 25, 2017)) (stating same in ADA Title III case in default judgment posture). To obtain a permanent injunction, the requesting party must establish that:

(1) it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, in considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626–27 (5th Cir. 2013) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

First, as already discussed, Plaintiff has plausibly shown that he suffered the irreparable injury of being discriminated against on the basis of disability in violation of ADA Title III. *Supra* Section II.B. Second, remedies at law are unavailable under ADA Title III for Plaintiff's alleged injury. *Id.* Third, Defendant will suffer little hardship by accommodating Plaintiff. *See, e.g.*, *Wright v. Thread Experiment, LLC*, 1:19-cv-01423-SEB-TAB, 2021 WL 243604, at *4 (S.D. Ind. Jan. 22, 2021) (finding "no hardship, beyond incurring certain costs" to update webpage for individuals with vision impairments); *Kong v. TMO, Inc.*, No. CV 15-7777 DMG (PJWx), 2016 WL 11758957, at *4 (C.D. Cal. Feb. 5, 2016) (mandating, on default judgment, that defendant provide an ADA "compliant, van-accessible parking space"). Fourth, a permanent injunction would serve the public interest "by achieving the ADA's 'broad mandate' to 'eliminate discrimination against disabled individuals.'" *See S.B. ex rel. M.B. v. Lee*, 566 F.

Supp. 3d 835, 871 (E.D. Tenn. 2021) (quoting *PGA Tour*, 532 U.S. at 675) (preliminary injunction context). The Court thus finds that injunctive relief is appropriate in this case. *See, e.g.*, *Wright*, 2021 WL 243604, at *4 (granting injunctive relief for ADA claim in default judgment posture); *Kong*, 2016 WL 11758957, at *4 (same).

Plaintiff's Motion is GRANTED insofar as it seeks default judgment on the ADA Title III claim. Defendant shall provide a reasonable accommodation for Plaintiff so that he is able to shop at Defendant's estate sales. Such reasonable accommodations may include, but are not limited to:

(1) allowing Plaintiff to shop without a face covering while maintaining a distance of at least six feet from other customers and staff;

(2) allowing Plaintiff to shop alone (or with others who have provided explicit consent to shop with an individual not wearing a face covering) for some reasonable period of time before opening or after closing; or

(3) allowing Plaintiff to shop alone (or with others who have provided explicit consent to shop with an individual not wearing a face covering) by appointment.

### III. PLAINTIFF'S BUSINESS DISPARAGEMENT CLAIM

In his Amended Complaint, Plaintiff added a business disparagement claim based on Texas state law and asks the Court to exercise supplemental jurisdiction over that claim.[6] Mot. Default J., Hernandez Aff., ECF No. 49 ¶ 6; Am. Compl. at 1, ¶¶ 5, 42–48.

For a federal court to have supplemental jurisdiction over a state law claim, the federal and state law claims must be sufficiently related. The Supreme Court addressed what it means for claims to be sufficiently related in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). Claims are sufficiently related when they "derive from a common nucleus of operative

---

[6] "In order for a federal court to invoke supplemental jurisdiction . . . it must first have original jurisdiction over at least one claim in the action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005). The Court has federal question jurisdiction over Plaintiff's ADA claim.

fact" and one "would ordinarily be expected to try them all in one judicial proceeding." *Id.* at 725. Since *Gibbs*, Congress has codified supplemental jurisdiction requirements. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 307–08 (3d Cir. 2003).

The supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). When determining whether claims "are so related . . . that they form part of the same case or controversy," *id.*, courts employ the test from *Gibbs*, *see, e.g.*, *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008); *Saenz v. Austin Roofer's Supply, LLC*, 664 F. Supp. 2d 704, 707 (W.D. Tex. 2009).

Whether claims share a common nucleus of operative fact, such that one would be expected to ordinarily bring them together, is an especially fact-specific inquiry. One way to think about it, or give substance to the test, is to ask whether "a different body of evidence will be required to prove each [claim]." *See Saenz*, 664 F. Supp. 2d at 710; *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) ("In deciding whether a state law claim is part of the same case or controversy as a federal issue, we look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence."). Another consideration is whether the alleged injuries overlap such that the court would have to determine the extent to which different parties are liable for an injury. *Feigler v. Tidex, Inc.*, 826 F.2d 1435, 1439–40 (5th Cir. 1987) (affirming supplemental jurisdiction over factually separate and "geographically distant" injury claims because both claims sought relief for injury to the plaintiff's back). If the evidence required to prove the state law claim does not sufficiently overlap with that required to

prove the federal law claim, or if the alleged injuries do not overlap, the court may lack supplemental jurisdiction over the state law claim.

Take some examples.  In *Saenz*, the plaintiffs brought a federal action under the Fair Labor Standards Act ("FLSA") for failure to pay overtime wages.  664 F. Supp. 2d at 705–06.  They also brought two sets of state law claims: (1) a contract claim based on defendant's alleged failure to pay commissions; and (2) tort claims based on assault, battery, and negligent training, retention, and supervision.  *Id.*  The court determined it had supplemental jurisdiction over the breach of contract claim but not over the tort claims.  Supplemental jurisdiction over the breach of contract claim was proper, the court reasoned, because both it and the FLSA claim "emerge[d] from a controversy over Plaintiffs' alleged entitlement to wages and the amount Defendants allegedly failed to pay."  *Id.* at 710.  The relatedness of those claims—as well as the alleged injury—meant parties would rely on substantially the same evidence, "namely hours worked, wages owed based on hours worked and commissions, and wages actually paid."  *See id.*  In other words, there would be a "substantial overlap in the witnesses and evidence produced for each claim."  *Id.*

Conversely, the FLSA and tort claims shared minimal evidentiary overlap.  In fact, the only overlap was that the events took place in the same workplace and under the same employer.  *Id.* at 708–09.  While there may have been overlapping witnesses and overlapping time periods between the FLSA and tort claims, the court concluded that was insufficient to confer supplemental jurisdiction.  *Id.*

In *Petty v. Portofino Council of Co-Owners, Inc.*, the plaintiffs sought to sell a condo they owned after they allegedly experienced persistent harassment and other troubles mainly having to do with the defendant condo board's alleged mistreatment of plaintiffs' deaf child.  702

F. Supp. 2d 721, 725–26 (S.D. Tex. 2010). The potential buyers attended a condo board meeting during which a board member allegedly made an unsubstantiated and provocative claim that one of the plaintiffs was a "hacker who had committed multiple violations, including criminal access of the personal information of other home owners." *Id.* (quotations omitted). The potential buyers backed out of the sale. *Id.*

Plaintiffs sued and brought a number of claims, including a federal claim under the Fair Housing Act ("FHA") alleging that defendant discriminated against them because their son suffered from a disability. *See id.* at 727–28. Plaintiffs also brought state law defamation, libel, and slander claims. *Id.* at 731–32. Defendant argued that the court lacked supplemental jurisdiction over the state law claims because they were not sufficiently related to plaintiffs' FHA claims. *Id.* The court concluded otherwise: "[B]oth claims involve[d] the same parties; both claims allege[d] that the [d]efendant's actions prevented [p]laintiffs from selling their condominium; both claims refer[ed] to events at the condominium's board meetings, and both claims relate[d] to the same time period." *Id.* at 732. With the overlap in necessary evidence to prove the claims and the overlap in alleged injury, the court concluded that it had supplemental jurisdiction. *See id.* at 732.

To prevail on his business disparagement claim here, Plaintiff "must establish that (1) the defendant published false and disparaging information about [his business], (2) with malice, (3) without privilege, (4) that resulted in special damages to [Plaintiff's business]." *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

All the events giving rise to Plaintiff's business disparagement claim occurred after Plaintiff's ADA Title III claim had already accrued. Plaintiff alleges that Defendant published on Facebook Plaintiff's letter of intent to sue for an ADA Title III violation and proposed

complaint. Am. Compl. ¶ 26. In the Facebook post, Defendant allegedly said "that Plaintiff operated an untrustworthy business, was a criminal and an 'ex-con' that 'was just trying to make a buck' and 'did not have a leg to stand on.'" *Id.* Plaintiff alleges that other estate sale agents saw the Facebook post and subsequently prevented Plaintiff from shopping at their estate sales which harmed Plaintiff's resale business. *Id.* ¶¶ 29–30.

The problem Plaintiff has is that none of these alleged actions that bear on Plaintiff's business disparagement claim are relevant to his ADA Title III claim. Apart from the fact that Plaintiff's notice of intent to sue over the ADA issue is arguably the origin of the business disparagement dispute, the claims are wholly separate.[7] In other words, like the FLSA/tort claims in *Saenz*, and unlike the FHA/tort claims in *Petty*, there is minimal evidentiary overlap between Plaintiff's federal claim and state claim.

Moreover, to prove his business disparagement claim, Plaintiff would be required to call witnesses that would be irrelevant to his ADA Title III claim. For example, Plaintiff alleges that Defendant "told Linda Maree Walker, who operates West Texas Estate Sales, LLC . . . that Plaintiff was a[n] 'anti-masker' that she should refuse to sell to or allow in her estate sale." Am. Compl. ¶ 30. But Ms. Walker has no connection to Plaintiff's ADA Title III claim. Neither do any of the other estate sale agents or customers that allegedly saw Defendant's Facebook post. *Id.* ¶¶ 26, 29. Such lack of overlapping witnesses suggests the absence of a common nucleus of

---

[7] The Court recognizes that, in presenting his business disparagement claim, Plaintiff may need to describe what happened that led to his ADA Title III claim. The need to do so, however, would only be for the purpose of telling the story, or setting up the background. It would ultimately have little, if any, bearing on his business disparagement claim. *Wisey's #1 LLC v. Nimellis Pizzeria LLC*, 952 F. Supp. 2d 184, 191 (D.D.C. 2013) ("Although they originate from the same general background facts, [defendant] has not proven that the two sets of claims are derived from a common nucleus of operative fact so as to satisfy section 1367(a).").

operative fact. *See Saenz*, 664 F. Supp. 2d at 710 (finding supplemental jurisdiction when "there *will be* substantial overlap in witnesses" (emphasis added)); *Hudson*, 90 F.3d at 455.

While tangentially connected, Plaintiff's two claims arise from different operative facts. The alleged injuries are also distinct. Thus, the Court lacks supplemental jurisdiction over Plaintiff's business disparagement claim. Plaintiff's Motion is DENIED insofar as it seeks default judgment on the business disparagement claim.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff Alejandro Hernandez's "Motion for Default Judgment" (ECF No. 49).

The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's business disparagement claim under Texas state law. The Court notes that the statute of limitations for Plaintiff's business disparagement claim has tolled during the pendency of Plaintiff's Amended Complaint, and will continue to be tolled for a period of 30 days after this Order. 28 U.S.C. § 1367(d). Plaintiff can try refiling his business disparagement claim in state court.

In accordance with Federal Rule of Civil Procedure 65(d), the Court **FINDS** and **ORDERS** as follows:

(1) The Court has jurisdiction over Plaintiff's ADA Title III claim under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)–(4). Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events complained of occurred in El Paso, Texas.

(2) The Court finds that Defendant Robert Stewart Roche, Jr. has failed to appear or otherwise defend in this lawsuit.

(3) Defendant Robert Stewart Roche, Jr., and his agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of this Order are permanently enjoined under 42 U.S.C. §§ 12188(a)(1), 2000a-3(a), and 12182(b)(2)(A)(ii) from discriminating against Plaintiff Alejandro Hernandez on the basis of his disability.

(4) Defendant Robert Stewart Roche, Jr., and his agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of this Order are permanently ordered under 42 U.S.C. §§ 12188(a)(1), 2000a-3(a), and 12182(b)(2)(A)(ii) to provide a reasonable accommodation to Plaintiff Alejandro Hernandez, which may include, but is not limited to:

   a) allowing Plaintiff to shop without a face covering while maintaining a distance of at least six feet from other customers and staff;

   b) allowing Plaintiff to shop alone (or with others who have provided explicit consent to shop with an individual not wearing a face covering) for some reasonable period of time before opening or after closing; or

   c) allowing Plaintiff to shop alone (or with others who have provided explicit consent to shop with an individual not wearing a face covering) by appointment.

(5) The Court will retain jurisdiction over this case for the purpose of monitoring the parties' compliance with the terms of the permanent injunction. If anyone subject to this injunction violates any part of this injunction, the Court may find the violator to be in civil contempt of this injunction and punish the violator with a fine, incarceration, or both.

The Court will separately issue a final and appealable judgment.

**So ORDERED and SIGNED this 2nd day of September 2022.**

_____
**DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE**